IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| YOLANDA LORINE HOLT<br>aka LORINE YOLANDA PIPER,<br><br>*Plaintiff*,<br><br>v.<br><br>HAMILTON COUNTY, TENNESSEE,<br>HAMILTON COUNTY SHERIFF,<br>JIM HAMMOND<br>and DOES 1-15, INCLUSIVE,<br>*Defendants*. | Case No.<br><br>JURY DEMAND |

## COMPLAINT WITH JURY DEMAND

COMES NOW, Plaintiff Yolanda Holt, by and through her below signed attorney of record, and as for her claims of action against the above-named Defendants, alleges and shows claims for relief as follows:

### BACKGROUND

1. This is a civil rights action brought under the Eighth Amendment to the Constitution of the United States and Title 42 of the United States Code, Section 1983 and 1988. Plaintiff brings this action to obtain compensatory damages, punitive damages, attorneys' fees, costs, and other equitable relief for the rape she suffered perpetrated by Nikkie Walker while in the custody of and due to the deliberate indifference of, Hamilton County, the Hamilton County Sheriff's Office, and the deputies at the Silverdale Detention Center in Chattanooga, Tennessee (hereinafter "Silverdale.")

2. Silverdale has long had the reputation of being a poorly run and dangerous jail. Inmates have been attacked and injured by other inmates armed with makeshift weapons, including stabbings with "shanks," or jail knives. Silverdale inmates also

have died due to medical neglect and maltreatment by staff, prompting numerous lawsuits.

3. This state of affairs is well-known, as was evidenced in mid-February of 2020, when federal Judge Sandy Mattice, after consultation with federal Judge Travis McDonough, directed all fifty-two federal inmates housed in Silverdale to be transferred out of Silverdale and put into neighboring facilities due to concern for the inmates' safety.

4. Hamilton County took over operations of the formerly privately-run jail in December of 2020, but deliberate indifference to the safety of inmates and medical neglect by officials have continued.

5. On the evening of March 22, 2022, or morning of March 23, 2022 Yolanda Holt ingested a pill she thought to be ibuprofen provided to her by another inmate at Silverdale Detention Center. Due to overcrowding in the jail, she had been sharing a bed with inmate Nikkie Walker for some days, each woman sleeping with their feet aligned with the other's head. Shortly after ingesting the pill Ms. Holt either fell asleep or passed out. Ms. Holt was awoken around 3:00 AM by raised voices and vicious taunting directed at her by other inmates in her pod, described by her as a celebration. Another inmate informed Ms. Holt that Ms. Walker had brutally raped her while she was unconscious. For the entire duration of this brutal rape other inmates had watched, cheered, and otherwise encouraged the vile act. These same inmates would continue to mock Ms. Holt as she notified jail staff of her brutal rape and was escorted away; taunts such as "You liked it, you know you did" and "She got that pussy, didn't she?" are only two examples of the unconscionable and abhorrent mockery to which Ms. Holt was subjected. When Sheriff's deputies reviewed footage of the pod at the time during and subsequent to the rape, they

documented other prisoners "hollering and screaming", shouting "She got her", exchanging high fives with Ms. Walker, dancing, and otherwise celebrating and making mockery of this savage rape. All this commotion, noise, and other disturbance of normal jail operations is documented on video, according to Sheriff's Deputies, but at no point did Hamilton County Sheriff's Office staff appear to prevent the rape from happening or intercede on Ms. Holt's behalf.

## **JURISDICTION AND VENUE**

6. This action is brough pursuant to 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the Eighth Amendment to the Constitution of the United States.

7. This Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

8. The venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391(b)(2) because it is where Silverdale is located and where its operations are based.

## **PARTIES**

9. Plaintiff Yolanda Holt is a resident of Chattanooga, Tennessee.

10. Defendant Hamilton County is a municipality that was created by the State of Tennessee in 1819. It is responsible for Silverdale's operations.

11. Defendant Sheriff Jim Hammond (hereinafter "Sheriff Hammond") is the former elected Sheriff of Hamilton County, sued in his individual and official capacity as sheriff, is an adult citizen of the State of Tennessee, and is domiciled in Hamilton County, Tennessee. Sheriff Hammond oversaw Silverdale and was responsible for the hiring, training, supervision, discipline, and control of the deputies under his command. He was responsible for all actions of the staff at Silverdale and was the final policy maker for Silverdale. He is liable both directly and vicariously for the

3

Case 1:23-cv-00061-KAC-CHS   Document 1   Filed 03/22/23   Page 3 of 16   PageID #: 3

actions complained of herein.

12. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 15, and therefore sues said Defendants by such fictitious names. DOES 1 through 15 may be natural persons or artificial persons. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible legally in some manner for the acts, conduct, omissions, and events referred to herein.

13. Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate parent of each of the remaining Defendants. Plaintiff further alleges that the acts of omissions of any agent or employee of Defendants were done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this Complaint to allege their names and capacities when the same has been ascertained.

## FACTUAL ALLEGATIONS

### HISTORY OF MEDICAL NEGLECT, INHUMAN CONDITIONS, AND INMATE ON INMATE VIOLENCE AT SILVERDALE

14. Silverdale is notorious for its failure to provide proper medical care to inmates, its inhuman living conditions, and regular occurrences of inmate-on-inmate violence.

15. A Nashville-based private prison corporation, CoreCivic, formerly the Corrections Corporation of America, operated Silverdale from 1984 until Hamilton County took over operations in December of 2020.

16. Despite Hamilton County's takeover of Silverdale, failure to provide proper medical

4
Case 1:23-cv-00061-KAC-CHS   Document 1   Filed 03/22/23   Page 4 of 16   PageID #: 4

care to inmates, inhuman living conditions, and inmate-on-inmate violence have continued.

17. On October 5, 2020, five Silverdale inmates were charged with attempted first-degree murder arising from an attack on a fellow prisoner that lasted for one to two hours and left the victim with 73 stab wounds.

18. On April 23, 2021, multiple Silverdale inmates including Luster Deloney were stabbed numerous times by fellow inmates wearing towels over their faces when officers placed them in a new cell despite the victims warning the officers that they would be attacked. Suit has been filed on this incident, docket 1:22-cv-00094.

19. On September 5, 2021, inmate Michael Brinkley was stabbed nine times, including once in the face, when officers failed to lock his cell door and ignored the victim's attempts to alert them to the mistake. Suit has been filed on this incident, docket 1:22-cv-00095.

20. In February of 2022, an open records request filed by NewsChannel9 revealed that Silverdale failed an inspection conducted by the Tennessee Corrections Institute in September of 2021. The inspection listed numerous deficiencies such as overcrowding in male housing units, multiple cameras in need of repair, and an HVAC unit in need of repair.

21. In March of 2022, a male Silverdale inmate was raped so savagely that he had to be released to a mental health facility with the likelihood of surgery necessary to repair the injuries incurred during the rape. The sentence he was serving was suspended.

22. On April 25, 2022, inmate Brandon Cornett died while in the custody of Silverdale. Mr. Cornett had undergone four back surgeries in the previous year, necessitating the use of multiple pain management medications. His wife asked if she could drop off his medications but was brusquely told the jail already had everything he would

need. When she spoke to her husband on April 8, 2022, Ms. Cornett could easily ascertain something was direly wrong, as Mr. Cornett's speech was incoherent, and his manner described in later court proceedings as "out of his mind". Ms. Cornett called Silverdale repeatedly over the following two weeks, begging for staff to conduct a wellness check on her husband, but was rebuffed every time with assurances the situation was being handled. Records later showed that Mr. Cornett was not seen by medical professionals until April 24, 2022, the day before he died and sixteen days after staff were alerted to his condition by Ms. Cornett. Suit has been filed on this incident, docket number 1:23-cv-00053.

23. On April 25, 2022, Hamilton County District Attorney General Neal Pinkston described Silverdale as "one of the most dangerous places to be in our county…" and claimed that it was "unacceptable." Sheriff Hammond responded saying that Pinkston "…hit the nail right on the head…"

24. In May of 2022, Silverdale failed a health inspection. Inspectors found rat droppings in the food storage area, no sanitizer present in washing buckets, and walls, floors, and ceilings that were dirty and in poor condition.

25. On May 16, 2022, an inmate was found dead in Silverdale. She was serving a 45- day sentence for drunk driving and was not provided the proper medication for her seizures and thyroid issues.

26. DaQuarrius "Jay" Brown (hereinafter "Mr. Brown"), died on May 26th, 2022, at Erlanger hospital, only four months after he first entered Silverdale as a healthy twenty-three-year-old man. Mr. Brown's death was entirely preventable. When he arrived at Silverdale in early February of 2022, he was HIV-positive and suffered from asthma, but like the one million other Americans with HIV modern medicine had allowed him to live a happy, health, and fulfilling life. Silverdale took all of that

6
Case 1:23-cv-00061-KAC-CHS   Document 1   Filed 03/22/23   Page 6 of 16   PageID #: 6

away from him. For two months, officials at Silverdale refused to give Mr. Brown his life-saving medicine. They refused to give him an inhaler to treat his asthma. As the weeks wore on he grew increasingly weak, eventually requiring the use of a wheelchair. He pleaded for attention from the nursing staff but was met with disdain and complaints about how overworked the nurses felt. His fellow inmates grew increasingly worried about him and even attempted to stage a fight, throwing his wheelchair, just to get the nurses' attention. He developed a cough, chest pain, and shortness of breath. By the time he was finally brought to Erlanger on March 27, 2022, his HIV had rapidly progressed and caused him to develop pneumonia and sepsis. His prognosis was already grim, but he told doctors that he wanted to live. He fought hard for his life for two agonizing months until he finally succumbed to his illness. He left behind his mother and father, grandmother, three brothers, two sisters, and numerous aunts, uncles, nieces, and nephews, all of whom are devastated by his early and unjust passing. Suit has been filed on this incident, docket 1:23-cv-00045.

27. On June 12, 2022, an inmate died in custody after being taken to the hospital for a bleeding ulcer.

28. On July 23, 2022, four inmates escaped Silverdale. It took guards almost four hours to notice they were missing.

29. On August 17, 2022, an inmate was not released in compliance with the judgment of the criminal court that suspended his sentence. He was subsequently illegally held by Silverdale for a period of 126 days.

30. On October 16, 2022, an inmate died seven months into serving his sentence at Silverdale. He suffered from numerous infections brought on by malnutrition, and Erlanger staff commented that he might have survived had he been brought to the hospital sooner.

31. In September of 2022, a seventy-year-old inmate was savagely assaulted by multiple other inmates. He was admitted on September 19 to Erlanger Hospital with brain bleeding. He subsequently died at Erlanger Hospital on November 19, 2022.

32. On December 20, 2022, yet another inmate was found dead in Silverdale. His cause of death was listed as a fentanyl overdose, according to the Hamilton County Medical Examiner.

33. Despite these multiple documented instances of medical neglect, inhuman living conditions, and violence, Plaintiff believes that Defendants have taken no action to prevent further deprivations of civil rights at Silverdale.

*Ms. Holt's Rape due to Neglect Committed by Silverdale Officials*

34. Ms. Holt first entered Silverdale a week or so prior to March 23, 2023.

35. Ms. Holt was provided with a small white pill that she thought was Ibuprofen by another inmate around 10 PM on March 22, 2022.

36. She reported the pill made her "sleepy".

37. At approximately 11 PM, Ms. Holt lay down to sleep on the mattress she and Ms. Walker were forced to share, due to not having enough mats for all the inmates in the pod.

38. Ms. Walker was not in the bed at this time.

39. In the very early morning hours of March 23, 2022, Ms. Holt was awoken by cheering and raucous noise.

40. Ms. Holt was extremely disoriented and groggy, with her pants and boxer shorts at her knees and no idea where she was.

41. She had some pain between her legs which she rated as a 7 out of 10. When Ms. Holt finally was able to reorient, another inmate told her, "You were just got." The other

inmate then proceeded to tell Ms. Holt that she had watched Ms. Walker rape her.

42. This noisy disturbance continued and at no point did corrections staff appear to be present or monitoring the situation in order keep Ms. Holt safe. If they were aware of the disturbance, they chose to ignore it.

43. Ms. Holt ran to the door of her cell.

44. Ms. Walker was walking around the cell, eating potato chips and encouraging the cheering, yelling, and pointing at Ms. Holt.

45. Ms. Holt heard inmates say things such as "She got you," and "You deserved it."

46. One inmate said Ms. Holt had been "fisted".

47. Ms. Holt was let out of the pod by Ofc. J. Stolz, after she informed him she had been raped. She was transported to for a forensic examination, which revealed severe tissue damage to Ms. Holt's vaginal area, extending to her cervix.

48. After her hospital visit, Ms. Holt was kept in isolation with another inmate who had been applauding and cheering on the rape.

49. Ms. Holt and Ms. Walker were eventually put back in the same pod, number 5, after Walker had been removed.

50. The investigating sheriff's deputy reports he was told by a witnessing inmate that six other inmates had threatened her, believing falsely that she had spoken to the deputy about the rape.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – VIOLATION OF EIGHTH AMENDMENT BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

51. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

52. The Civil Rights Act, as codified at 42 U.S.C. § 1983, provides as follows:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

53. Pursuant to the Eighth Amendment, Ms. Holt, an inmate at Silverdale, had a constitutional right to be free from cruel and unusual punishment during her confinement.

54. Defendants acting individually and together, under the color of law, acted to violate Ms. Holt's rights when they ignored a noisy disturbance in her cell and failed to provide her with a housing unit where she would not be raped.

55. Defendants understood their actions would result in the deprivation of Ms. Holt's constitutional rights as evidenced by the numerous incidents of inmates at Silverdale being beaten and raped, dying of drug overdoses, dying from medical neglect, the failed inspections at Silverdale, and the public outcry from both that preceded these events.

56. Defendants' intentional, unreasonable, reckless, and deliberately indifferent acts were the moving force behind the violation of Ms. Holt's constitutional rights and her resulting injuries.

57. Ms. Holt's right to be provided humane living conditions is well-established, and reasonable persons in Defendants' position would have known or should have known that their actions would result in a violation of Ms. Holt's constitutional rights.

# SECOND CAUSE OF ACTION

## 42 U.S.C. § MONELL LIABILITY BROUGHT BY PLAINTIFF AGAINST DEFENDANT'S HAMILTON COUNTY AND SHERIFF HAMMOND

58. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Hamilton County—through the decisions of its policymaker Sheriff Hammond—was directly responsible for the deprivation of Ms. Holt's constitutional rights as described herein and is thus subject to liability under 42 U.S.C. § 1983 and *Monell v. Dep't of Social Servs of New York*, 436 U.S., 658, 691 (1978).

60. At all times material to this claim, Defendants Hamilton County and Sheriff Hammond failed to train, adequately supervise, and discipline officers regarding the provisions of maintenance of humane and safe living conditions.

61. Defendants knew of the multiple failures in policy at Silverdale, as established by the instances cited herein, but nevertheless continued to operate the facility with minimal adjustments.

62. Defendants were aware of the need to supervise, train, investigate, and discipline their subordinates to mitigate unreasonable risks of harm to inmates in Defendants' custody.

63. Despite this knowledge, Defendants failed to adequately train, supervise, or discipline individuals who engaged in these behaviors. This failure to train, supervise, and discipline was a moving force behind the serious harm and violation of constitutional rights suffered by Ms. Holt.

64. As final policymakers, these Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly

and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights.

65. Further, these Defendants failed to establish and maintain policies to mitigate known serious risks of harm, and these Defendants should have known that such failures would deprive people in their custody, including Ms. Holt, of constitutional rights.

66. Defendants were aware that the policies, procedures, practices, customs, and usages they established and those they failed to establish would result in violations of constitutional rights.

67. These policies and practices specifically included Defendants' practice of failing to adequately classify inmates or develop and implement an adequate classification plan, failing to ensure adequate investigation into critical incidents, failing to implement corrective action plans to address the known substantial risks of harm described herein, failing to ensure deputies were observing housing units, failing to investigate incidents of harm, failing to provide appropriate training, disciplinary procedures, and supervision of staff, failing to ensure adequate staffing so as to effectively create inhumane conditions of confinement and deficient medical care that allowed known substantial risks of serious injury to go unmitigated, failing to follow or enforce basic jail guideline requirements, failing to establish or enforce policies regarding the proper provisioning of medical care to inmates, failing to engage in oversight sufficient to prevent constitutional rights violations, and failing to adequately respond to obvious violations of constitutional rights of people held at Silverdale.

68. These actions, and failures to act, were a moving force in the substantial risk of harm and unconstitutional conditions of confinement leading to Ms. Holt's brutal rape.

69. At all times material to this claim, Defendants were acting under color of law and in

the course and scope of their employment. Defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Ms. Holt by failing to mitigate known serious risks of harm. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problems and consequences, thereby effectively ratifying them.

70. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Ms. Holt's brutal rape.

## THIRD CAUSE OF ACTION

### TENNESSEE COMMON LAW NEGLIGENCE BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

71. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Defendants owed a legal duty of care to Ms. Holt to protect her from reasonably foreseeable harm.

73. Defendants' breaches of their duty of care to Ms. Holt were the direct and proximate cause of her brutal rape.

## FOURTH CAUSE OF ACTION

### TENN. CODE ANN. §1-3-121
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

74. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Defendants knowingly and deliberately failed to ensure constitutionally adequate levels of inmate safety and living conditions at Silverdale.

76. Tenn. Code Ann. § 1-3-121 enables Plaintiff to vindicate claims for declaratory and injunctive relief in cases involving illegal and unconstitutional government action. It specifically provides that: "Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action."

77. Defendants' chronic deliberate indifference to inmate safety, medical needs, and living conditions contravenes the provisions of the Eighth Amendment to the United States Constitution.

78. Defendants' actions additionally contravene Tenn. Const. art I, § 32, which provides: "That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."

79. Absent, at minimum, regular independent monitoring and unannounced inspections designed to determine whether Defendants have remedied their chronic deliberate indifference to inmate safety, medical needs, and living conditions, Defendants will continue to act both illegally and unconstitutionally with respect to their operation of Silverdale.

80. To remedy Defendants chronically illegal and unconstitutional actions at Silverdale, this Court should appoint an independent monitor to conduct regular unannounced inspections of Silverdale and report whether Defendants have remedied their chronic unlawful conduct.

81. In the absence of Defendants coming into compliance with their obligation to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions,

this Court should issue an injunction permanently enjoining Defendants from continuing to operate Silverdale going forward.

## JURY DEMAND AND PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against the Defendant and respectfully requests the following relief:

82. For general damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

83. For special damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

84. For other economic and compensatory damages, in an amount to be determined by proof at trial;

85. For punitive and exemplary damages, including treble damages, as permitted;

86. For costs of suit incurred herein;

87. For reasonable attorneys' fees;

88. That this Court declare that Defendants acted illegally by failing to ensure constitutionally adequate levels of inmate safety, medical attention, and living conditions at Silverdale;

89. That this Court appoint an independent monitor to conduct regular unannounced inspections at Silverdale and report whether Defendants have remedied their chronic unlawful conduct, and that this Court issue an injunction permanently enjoining Defendants from continuing to operate Silverdale if they fail to do so;

90. For such other and further relief as this Court deems just and proper;

91. For such other and further relief as this Court deems just and proper pursuant to 42 U.S.C. § 1988; and

92. A jury of twelve be empaneled to hear this cause.

Respectfully submitted,

**SPURGIN & MATTINGLY, PLLC**

By: /s/ Brandy Spurgin-Floyd
     Brandy Spurgin-Floyd (BPR #030434)
     Attorney for Plaintiff
     1159 E. Main St., Ste: 105
     Chattanooga, TN 37408
     (423) 521-0044 Phone
     (423) 402-9471 Fax
     brandy@chattlawforall.com